Belknap,
Feb. 2, 1943. } No. 3367.

LACONIA *v.* JOSEPH J. MORIN.

*William W. Keller*, City Solicitor, by brief and orally, for the plaintiff.

*Normandin & Normandin* (*Mr. F. A. Normandin* orally), for the defendant.

*Stephen M. Wheeler*, Acting Attorney-General, by brief, for the State as *amicus curiae*.

PAGE, J. The Province Road, of which the *locus* is a part, was laid out about 1770 in accordance with the provisions of acts of the provincial legislature passed in 1763 and 1765. 3 N. H. Laws 338, 351. The age of the highway suggests that the public acquired only an easement of passage over the property that was taken. Hening's Digest, 781. The provision by the legislature (3 N. H. Laws 351)

that, after the layout of the Province Road should be determined by the committee, the proprietors of the several towns should at their own expense clear the way and make it passable for teams "thro their respective grants" is significant of an intention to take no more than was necessary for suitable travel over the property involved. The acts indicated no claim to the soil, and the title to the soil remained in the abutting owners. *Copp* v. *Neal*, 7 N. H. 275, 277. The abutting owners were left with rights to use the *locus* for any purpose not inconsistent with the public travel, and it is to be presumed that such rights extended to the thread of the way. *Lyford* v. *Laconia*, 75 N. H. 220, 227; *Reed's Petition*, 13 N. H. 381, 384.

The abutting owner having retained title to the land, the trees growing thereon belonged to him. *Rowe* v. *Addison*, 34 N. H. 306, 312. The public may not take the trees except for public use, after paying the owner just compensation. *Baker* v. *Shephard*, 24 N. H. 208, 213. The owner may not be deprived of them for public use for shade and ornamentation without purchase or condemnation proceedings. *Bigelow* v. *Whitcomb*, 72 N. H. 473.

The tree in question was designated and tagged in 1902 by the plaintiff's tree warden as reasonably necessary for shade and ornamentation under the provisions of Laws 1901, *c*. 98. The plaintiff did not acquire title by purchase or by proceedings for condemnation as permitted by that act. The city claims, however, to have acquired title by adverse possession.

Its first claim is that the tagging itself was a possessory act. But the affixing of the tag could have no meaning except such as the statute gave it. Under section 2 of the act, the marking was merely evidence of the tree warden's decision that the tree was reasonably necessary for shade and ornamentation, and consequently suitable to be controlled by the municipality. By section 3 provision was made that if any tree marked should prove to be private property, and the owner refused to convey to the municipality, the tree warden should acquire it by purchase or by eminent domain. As a claim of title, the tagging was therefore perfectly colorless; it was significant only as a preliminary to acquisition of title, or, if that was not effected, to the exercise of such control as the act permitted over privately owned shade trees in the highway. The failure of the city to take any steps whatever to acquire title to this tree deprived the act of tagging of any virtue or meaning whatever as a claim of title. Whether or not the act is to be construed as doing away with the possibility of acquisition of title by adverse

possession, no act under it can avail as a possessory act unless it clearly shows a claim of title.

The acts alleged as possessory all lack a clear claim of title. Since they are possibly referable to a claim of control without claim of title, they cannot be said to have the color of openness, adversity or exclusiveness essential to the acquisition of title by adverse possession. *Manchester* v. *Duggan*, 75 N. H. 33. The act of 1901 contemplated municipal control over ornamental trees properly designated in the highway. Section 4 permitted municipalities to appropriate money for pruning and protecting such trees whether in public or private ownership, as well as to plant new trees or to acquire title to old trees in the manner prescribed. But the titles of private owners were distinctly protected. The statute further recognized the rights of abutting owners by permitting them to apply to the tree-warden for the trimming or removal of publicly owned trees, and giving him authority to authorize the removal, with or without hearing (s. 5). A further distinction was observed between public ownership and private ownership. There is a penalty (s. 6) for injuring any highway tree in public ownership, or attaching to it any poster, or allowing a horse to injure it, but privately owned trees are given no such protection. The owner may hitch his horse to his own tree without penalty, or may permit others to do so. In other words, the municipality may trim and preserve a privately owned tree, at the public expense, if it chooses, but the property rights of the owner are amply protected.

In this light the various acts of "ownership" by the city lose meaning. If the tree warden tore from the tree a circus poster, he assumed to act, it is true, as if the city owned the tree (s. 6). But it does not appear that any poster was ever put on this particular elm and torn off by the tree warden. All of the other alleged possessory acts concerning this tree, including treatment to kill moths and patching leaks, had to do with pruning or protection of an ornamental shade tree in the highway. Since the city was authorized to spend public money for the public benefit on such trees, whether publicly or privately owned, the public care of this tree was not colorably a claim of public title any more than it was an admission of private title. When the city cut off rotten branches, it did no more than exercise its rights to control highway trees, by whomever owned, when reasonably necessary to give the public safe and unimpeded use of the highway.

The discussion heretofore concerns only the act of 1901. It

establishes that the city did not acquire title by adverse possession prior to 1925, when the act was amended. No act of the tree warden under color of the amending act, Laws 1925, c. 89, s. 1 (P. L., c. 93, s. 23), could be the basis for acquisition of title by adverse possession. By that act the tree warden was deprived of control of trees other than those acquired "by gift or purchase, or planting . . . or by condemnation." Since all the warden's acts regarding this tree after 1925 were unauthorized and *ultra vires* as far as the municipality was concerned, they were void for all purposes.

The plaintiff claims that the defendant can make no claim of right, since the deed to his wife describes a tract bounded on the east by Pleasant Street, excepting therefrom a portion described as bounded on the east by the center line of the curbing along the west side of the sidewalk. The description of the Morin tract as bounded on the street, with side lines measured from the west side of the street, does not exclude, but includes, the soil to the thread of the monument, which is the street itself. Hening's Digest, 463; *Woodman* v. *Spencer*, 54 N. H. 507. If the exception is to be construed as giving the owners of the excepted tract no title to the soil of the street (a matter not here to be decided), the title to the soil of the street would still be in Mrs. Morin under the description in her deed.

The plaintiff says that the defendant, by certain acts concerning this and another tree, admitted the city's title. The defendant, for all that appears, was not a trespasser with respect to his wife, the owner. Assuming agency, it does not appear that she ever authorized him to admit title in the city, and the supposed admissions have no weight to establish the plaintiff's claim of title. *Semprini* v. *Railroad*, 87 N. H. 279; *Alexander* v. *Todd*, 89 N. H. 365.

The defendant having acted for one having title and the plaintiff having shown no superior title, trespass does not lie. *Lund* v. *Parker*, 3 N. H. 49, and numerous cases cited in Hening's Digest, 1552.

*Judgment for the defendant.*

All concurred.