Grafton
No. 89-542

ARTHUR W. MUDGE & a.

v.

THE PRECINCT OF HAVERHILL CORNER

March 8, 1991

*Stebbins, Bradley, Wood & Harvey P.A.*, of Hanover (*Blair C. Wood* on the brief and orally), for the plaintiffs Arthur W. Mudge and Vernon Dingman.

*McSwiney, Jones, Semple, Bowers & Wise P.C.* of Concord (*Paul C. Semple* on the brief and orally), for the plaintiff Susan Condodemetraky.

*Upton, Sanders & Smith* of Concord, for the defendant, waived brief and oral argument.

BATCHELDER, J. The plaintiffs Arthur Mudge and Vernon Dingman are abutters to a tract of land in North Haverhill upon which the owner, plaintiff Susan Condodemetraky, desires to expand an existing mobile home park. Mudge and Dingman seek to constrain the development and assert that the expansion is in violation of the land use regulations presently in place in the Precinct of Haverhill Corner. Specifically, they claim that the expansion is precluded by density requirements and constitutes a commercial use of the premises necessitating a special exception under RSA 674:27. A lesser issue before us is the separate claim pursued by Condodemetraky that, in determining density, the land occupied by rights-of-way is includable in the calculation. The Superior Court (*Morrill*, J.) upheld the decision of the Zoning Board of Adjustment of the Precinct of Haverhill Corner, issuing a building permit to Condodemetraky for expansion of the existing mobile home park, and ruled that the road rights-of-way could be included for density purposes. This appeal followed, and we reverse and remand.

The procedural background is not complicated. On November 24, 1986, Susan Condodemetraky purchased from Sun Goal, Inc. a 42.47-acre tract of land located east of Route 10 in the Precinct of Haverhill Corner. At the time of purchase, 5.5 acres of the property were devoted to a mobile home park, with twenty-two units. Of the remaining land, 12.3 acres were unsuited to development due to soil types and slopes, and 2.5 acres consisted of a pond.

In 1986, the Precinct of Haverhill Corner voted to adopt the emergency temporary zoning ordinance set forth in RSA 674:24–30. On December 10, 1987, Condodemetraky applied to the commissioners of the precinct for issuance of a building permit to construct twenty-

two additional mobile home sites, and on December 28, 1987, she applied to the Haverhill Planning Board for subdivision approval of a cluster development comprising the twenty-two sites. The building permit was granted on February 7, 1988, and subdivision approval was granted on February 16, 1988.

On February 12, 1988, Vernon Dingman appealed the commissioners' issuance of the Condodemetraky building permit. This appeal was made to the precinct zoning board of adjustment (ZBA). Only three members of the five-member ZBA participated at the hearing. Under RSA 674:33, III, the concurring vote of three ZBA members was necessary to reverse any action taken by the commissioners. Dingman obtained a two-vote majority on each of the objections raised by the appeal, but failed to obtain the three votes required by statute. The ZBA voted unanimously that the use proposed was commercial in nature and required a special exception under RSA 674:27, but it then waived the special exception requirement.

Following denial of his appeal, Dingman filed a motion for rehearing, and a like motion was filed by Arthur Mudge, another precinct resident. At a hearing held on April 26, 1988, the ZBA denied the motions in all aspects, although it concluded that the surface area of the interior roads should not be included when calculating allowable density.

Each party filed an appeal with the superior court. After a hearing on the merits, the court issued its order denying the request of Mudge and Dingman that the ZBA's upholding of the building permit be vacated. The court also ruled that the ZBA had, however, been in error when it determined that the area occupied by the interior roads should be deducted from the area available to meet density requirements and, in this aspect of the case, granted Condodemetraky's appeal.

Mudge and Dingman first argue that the trial court erred when it upheld the ZBA's determination that the original mobile home park, situated on 5.5 acres, was a pre-existing, nonconforming use. They maintain that when the interim zoning ordinance was adopted, the property conformed to the density requirements of the ordinance. We agree.

A nonconforming use is defined by the interim zoning ordinance as a "use of land, building or premise which is *not* a use *permitted*." RSA 674:24, IV (emphasis added). At the time of enactment of the ordinance, Condodemetraky owned a 42.47-acre tract of land. She

introduced evidence at trial that 14.8 of these acres were unsuitable for development, leaving 27.67 developable acres. On this single tract, Condodemetraky operated a twenty-two site mobile home park. The interim zoning ordinance required a minimum density of one acre per site and permitted cluster development as a matter of right. RSA 674:25, III and XI. With more than one acre of developable land per site, the park fully complied with the density requirement at the time of enactment of the ordinance.

■■ Condodemetraky maintains that her land actually consists of two identifiable lots, one composed of 5.5 acres with twenty-two existing mobile home sites, and the other made up of the remaining 36.97 acres, of which 22.17 are developable. This claim is based in part on the fact that the town taxed the mobile home park separately from the remainder of the property and that a subdivision plan was approved by the water supply and pollution control commission in 1971. However, the fact that the town separately assesses the existing mobile home park is not conclusive on the issue of whether the property constitutes one or two lots for zoning purposes. *Robillard v. Town of Hudson*, 120 N.H. 477, 480, 416 A.2d 1379, 1381 (1980) (citations omitted). Also, subdivision approval from the water supply and pollution control commission shows only that Condodemetraky complied with State requirements designed to "protect water supplies, to prevent water pollution . . . and to prevent nuisances and potential health hazards." *See* RSA 485-A:1 and :29 (Supp. 1990). Such approval cannot defeat the exclusive jurisdiction of a planning board over subdivisions of land under RSA 674:42.

■ In response to plaintiffs Mudge and Dingman's request, the trial court found, "At the time of enactment of the Zoning Ordinance, the Property consisted of a single zoning lot for zoning purposes." Because the property constituted a single lot, it conformed to the density requirements of the ordinance, with twenty-two sites on 27.67 acres of developable land, and there was no nonconforming use.

The critical element lacking in the Condodemetraky claim is any separate geographical identity of the land encompassing the existing park and of the remaining land. It was, in fact, one tract.

■ On appeal, we will uphold the trial court's findings and rulings unless they are unsupported by the evidence or erroneous as a matter of law. *Condos East Corp. v. Town of Conway*, 132 N.H. 431, 435, 566 A.2d 1136, 1139 (1989). Because we find no basis for the trial

court's ruling that there was a nonconforming use of the property, other than that it consisted (at least in theory) of *two* lots, and because the trial court specifically ruled that the property consisted of a *single* lot, we reverse.

Next, Mudge and Dingman argue that Condodemetraky was required to apply for a special exception as a commercial use under RSA 674:27 in order to establish a second mobile home park on the premises. We agree.

■ At its meeting on March 16, 1988, the ZBA determined that Condodemetraky should have applied for a special exception before the building permit was issued. After making that finding, the ZBA then waived the special exception requirement. The superior court correctly ruled that, although the ZBA has the authority to grant a special exception under RSA 674:33, IV, it cannot waive the requirement that one be obtained. *Stone v. Cray*, 89 N.H. 483, 487–88, 200 A. 517, 521 (1938); *see also Shell Oil Co. v. Manchester*, 101 N.H. 76, 78, 133 A.2d 501, 502 (1957). We disagree, however, with the trial court's ruling that no special exception was required.

■ RSA 674:32 (Supp. 1990) identifies three types of manufactured housing developments: (1) manufactured housing located on individual lots, (2) manufactured housing parks, and (3) manufactured housing located in subdivisions on individually owned lots. The statute states: "No special exception or special permit shall be required for manufactured housing located on individual lots [type (1)] or manufactured housing subdivisions [type (3)]. . . ." *Id.* Manufactured housing parks are clearly omitted from the provision exempting manufactured housing from the special exception requirement. It is apparent that manufactured housing parks require special exception analysis, in the context of this case, because they represent commercial uses, as distinguished from the uses in the first and third categories.

■ ■ Condodemetraky asserts that the special exception requirement violates RSA 674:32 (Supp. 1990), which imposes an affirmative duty on municipalities to afford reasonable opportunities for manufactured housing. However, this court has held that a city ordinance which required a special exception for mobile home parks was not violative of the anti-exclusion protections afforded to manufactured housing under the 1986 version of RSA 674:32, which does not differ from the current version of the statute for purposes of our analysis here. *Jensen's, Inc. v. City of Dover*, 130 N.H. 761, 766–68,

597 A.2d 277, 280–82 (1988). We noted in *Jensen's* that "[m]unicipalities have been granted the sole discretion to impose reasonable restrictions, within the limitations of the enabling statute, upon the development of mobile home parks." *Id.* at 768, 547 A.2d at 281. Accordingly, we hold that plaintiff Condodemetraky was required to apply for a special exception to expand her manufactured housing park, and we reverse the trial court's ruling to the contrary.

█ █ With respect to Condodemetraky's claim concerning inclusion of the surface area of the rights-of-way in determining density, we adopt what we find to be the better-reasoned position. "In computing the size of lots, land contained in streets, public or private, which give access to the lot is excluded." 3 E. ZIEGLER, RATHKOPF'S THE LAW OF ZONING AND PLANNING § 34.04 (4th ed. 1990); *see also Loveladies Property Owners Association, Inc. v. Barnegat City Service Co., Inc.,* 60 N.J. Super. 491, 503, 159 A.2d 417, 424 (1960). Accordingly, we reverse and remand to the superior court for such action consistent with this opinion as may be required.

*Reversed and remanded.*

All concurred.