**In re Michael J. COHEN, Debtor.**

**Granite Bank, Movant,**

v.

**Michael J. Cohen, Respondent.**

**Bankruptcy No. 01–10207–JMD.
CM No. 01–162.**

United States Bankruptcy Court,
D. New Hampshire.

Aug. 15, 2001.

---

Diane M. Puckhaber, Rogers & Puckhaber, Concord, NH, for Debtor.

William S. Gannon, Wadleigh, Starr & Peters, P.L.L.C., Manchester, NH, for Creditor Benjamin Cohen.

Daniel P. Luker, Sulloway & Hollis, P.L.L.C., Concord, NH, for Granite Bank.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

### MEMORANDUM OPINION

J. MICHAEL DEASY, Bankruptcy Judge.

## I. INTRODUCTION

The Court has before it two motions, one filed by the Debtor, Michael J. Cohen (the "Debtor"), and the other by Granite Bank (the "Bank"). The Bank filed a motion seeking relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2).[1] The Debtor. filed a motion seeking the Court's determination of the value of the Debtor's real property in Henniker, New Hampshire (the "Property") pursuant to section 506 for plan purposes and for determining the nature and extent of adequate protection. The Court held preliminary hearings on the motions on March 26, 2001 and April 19, 2001, and evidentiary hearings on the motions on June 28, 2001 and July 23, 2001. After hearing the evidence and the arguments of counsel, the Court took the matters under advisement. For the reasons set forth in this opinion, the Court finds that the Bank's security interest in the Property may not be modified by a Chapter 11 plan of reorganization and grants the Bank relief from the automatic stay under section 362(d)(2).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Debtor filed for bankruptcy protection under .Chapter 11 on January 25, 2001, one day before the Bank was to conduct a foreclosure on the Property. The mortgage on the Property secures approximately $390,000 due to the Bank under the terms of a promissory note. The Debtor testified that in 1994 he refinanced both his home mortgage and a business loan for his corporation, Pitchfork Records, Inc., with the Bank's predecessor in interest. The loan and mortgage were amended in 1998. It is undisputed that the only collateral for the Debtor's obligation to the Bank is the Property.

The Debtor has lived on the Property since 1978. In 1978 the Debtor and his former spouse purchased a house, barn and 80 acres of land in Henniker. Although the land was bisected by Huntington Road, the deed to the Debtor and his then spouse described the land and buildings ·as one parcel without reference to Huntington Road, a Class V road. In 1980, the Debtor conveyed his interest in 20.3 acres to his then spouse (the "1980 Parcel") leaving the house and 59.7 acres from the original purchase, previously referred to herein as the Property. The 1980 Parcel was a portion of that part of the original purchase south of Huntington Road. The description of the 1980 Parcel refers to the south side of Huntington Road as a boundary and recites:

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

This conveyance is made subject to a general highway easement which is reserved to the Town of Henniker over that portion of the above premises lying within twenty-five (25) feet of the center line of Huntington Road.

As part of the resolution of a divorce action in 1992, the Debtor's former spouse deeded her interest in the Property to the Debtor, as trustee, and retained title to the 1980 Parcel. The description in the 1992 deed was the same as the description in the original 1978 purchase, but specifically excepted and reserved the 1980 Parcel. The Debtor, individually and as trustee, granted a mortgage to the Bank in 1994. The 1994 mortgage deed used the same description as the 1992 deed, describing the Property as a single parcel. Throughout his period of ownership the Debtor has utilized the Property as his residence. The Debtor takes the position that the Property consists of two separate parcels of land, the northern parcel containing 25.0 acres, on which the Debtor's home sits, and the southern parcel containing 34.7 acres, which is mainly woodlands. The Bank takes the position that the Property is a single parcel.

The Debtor does not dispute that the Property has never generated any income for the Debtor. The Debtor testified, however, that the Property contains various woodlands, has been subject to an approved timber management plan for at least fifteen years, and that he intends to harvest oak trees from the Property in another five to eight years. A review of the Debtor's Chapter 11 plan reveals that the Debtor does not intend to rely on any timber income to fund his plan of reorganization.

## III. DISCUSSION

The motions raise three related issues. First, is the Property two parcels of land such that the Bank holds a security interest in real property other than the Debtor's principal residence for purposes of the anti-modification provision of section 1123(b)(5)? Second, what is the reorganization value of the Property? Finally, is the Property "necessary to an effective reorganization" within the meaning of section 362(d)(2)(B)? Since the resolution of the last issue is likely to depend on the answers to one, or both, of the first issues, the Court will consider them in order.

### A. The Property as Collateral under Section 1123(b)(5)

Section 1123(b)(5) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994.[2] The legislative history of the 1994 Reform Act makes it clear that Congress intended to amend Chapter 11 of the Bankruptcy Code to include the same anti-modification provision applicable to Chapter 13 plans under section 1322(b)(2) and the Supreme Court's decision in *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), which held that section 1322(b)(2) bars bifurcation where the creditor's secured claim is secured only by a lien on the debtor's principal residence. *See Lomas Mortgage, Inc. v. Louis,* 82 F.3d 1, 6 (1st Cir.1996). The statutory language provides that a Chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence,...." 11 U.S.C. § 1123(b)(5).

Before the Court can determine the applicability of the Chapter 11 anti-modification provision, it must decide the

---

**2.** Pub.L. No. 103–394.

date to be used to determine the status of the Bank's security interest in the real estate collateral and the law to apply in determining the extent of such interest. This Court agrees with and adopts the reasoning of Judge Yacos in *In re Wetherbee*, 164 B.R. 212, 215 (Bankr.D.N.H.1994), that since "claim" is a word of art in bankruptcy that describes a creditor's right to payment in a bankruptcy proceeding, the Court should look to the status of the property as collateral as of the petition date and not the date of the mortgage. *Cf. In re Smart*, 214 B.R. 63, 68 (Bankr. D.Conn.1997). The nature and extent of the Bank's security interest in the Property is generally determined under state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *In re Rancourt*, 123 B.R. 143, 145 (Bankr.D.N.H.1991) (citing *Lewis v. Manufacturers Nat'l Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961)). The status of the Property as one parcel or two parcels should be determined under state law absent a federal interest in national uniformity. Since the rights of the Debtor and the Bank to treat the Property as two separate parcels, without subdivision approval, is a matter of state land use and conveyancing law, and neither party has identified any overriding federal interest, the Court will look to state law to determine the status of the Property on the petition date for purposes of applying the anti-modification provision of section 1123(b)(5).

In *Keene v. Town of Meredith*, 119 N.H. 379, 402 A.2d 166 (1979), the town argued that both parcels were substandard under the town's zoning ordinance and since the

parcels had been under common ownership and use for a period of time that predated the town's zoning ordinance, the two parcels should be considered as one unitary parcel requiring subdivision approval prior to any separate conveyance of either parcel. The New Hampshire Supreme Court held that where two parcels of land were separated by a road, taxed as separate lots, identified as separate lots on the town's tax map, and had a history of treatment and use as separate lots, they could be conveyed separately without obtaining subdivision approval. The Debtor argues that the decision in *Keene* controls because the Property consists of two separate lots, separated by a road, and is taxed as two parcels only one of which is used as the Debtor's principal residence. The Bank argues that *Keene* is distinguishable from the facts of this case and, compels the opposite result.

The Debtor's analysis of *Keene* is incomplete. The decision in *Keene* was not based solely upon the fact that a road divided two separate tax parcels. In *Keene*, the two parcels were described separately as lots in the deed to the owner and, as described, were bounded by land which was reserved for the road and not conveyed to the owner. *Keene*, 119 N.H. at 380, 402 A.2d 166. The two lots had both been previously improved by buildings and were taxed as separate lots. *Id.* The court in *Keene* specifically distinguished the facts in that case from another case where two buildings had been previously built on one parcel of land. While the existence of the road was a critical element in the *Keene* decision, it is not clear to the Court that the decision would have been decided the same way if the second parcel of land had never been improved or used separately from the owner's use of the first lot. The improvements on the second lot had been legally con-

structed, the two parcels had a history of uses separate from the owner's occupancy (i.e. guests and paying tenants) and neither parcel was an accessory use to the other.

The Debtor is correct that the road and the separate tax map designation were factors in *Keene*. However, they were not the basis for the decision. The primary, if not controlling, factor in *Keene* was the evidence of a long history of treatment and use of the two parcels as separate lots by the owner and the town. *Id.* Such a history has been distinguished from cases where there are separate lots for tax purposes, but a history of unitary use. *See Mudge v. Precinct of Haverhill Corner,* 133 N.H. 881, 885, 587 A.2d 603 (1991) (even though property was assessed and taxed as two parcels it had been acquired as one piece, the two tax parcels had no separate geographical identity and were one lot for zoning purposes); *Robillard v. Town of Hudson,* 120 N.H. 477, 480, 416 A.2d 1379 (1980) (owner's predecessor in title had treated two lots as one lot in obtaining a permit for construction of a duplex).

■ In this case, the Debtor acquired the Property as one parcel. The legal description in the Debtor's deed and in the mortgage to the Bank describes the Property as one parcel. The only exception in the mortgage deed to the Bank refers to a twenty acre parcel previously deeded to the Debtor's former wife. Neither the Debtor's deed nor the Bank's mortgage deed reserve the land under the road from the description of the property conveyed. Historically, absent an express conveyance of the right of way for a town road, the public acquired only an easement of passage over the property taken with the abutting land owners retaining title. *City of Laconia v. Morin,* 92 N.H. 314, 316, 30 A.2d 479 (1943). Even if a parcel is de-

scribed as being bounded by a stream or a highway, unless an express exception is stated in the grant, the conveyance is presumed to run to the thread of the stream or the center of the road. *Sheris v. Morton,* 111 N.H. 66, 71, 276 A.2d 813 (1971); *Luneau v. MacDonald,* 103 N.H. 273, 276, 173 A.2d 44 (1961).

The treatment of the Property as a unitary parcel in the relevant legal documents is consistent with the Debtor's treatment of the entire Property as his homestead. Although a portion of the Property was subject to a timber management plan, the Debtor testified that he had never actually cut any timber on the Property and that in approximately five to eight years he might realize $20,000 to $40,000 in income after twenty years of "timber management." The income potential from the Property is *de minimis* and the timber management plan was instituted in order to qualify the Property for a reduced tax assessment under New Hampshire's current use tax provisions, not as a business venture.

The Court finds that the Debtor has not established any history of treatment and use of the Property as two parcels of real estate. The only similarities between the Debtor's case and the facts in *Keene* are the road and the Property's designation as two parcels for tax purposes. Nothing in the Debtor's actual use, the legal description, or any action by the Town of Henniker with respect to the Property reflect any treatment inconsistent with it being a unitary parcel of real property. The sole fact that the Property is assessed as two lots for tax purposes is not conclusive. *Mudge,* 133 N.H. at 885, 587 A.2d 603.

The Debtor argues that the unimproved parcel within the Property has potential for subdivision into several building lots and, therefore, is an investment property separate from the improved parcel which

is his principal residence. However, the Debtor testified that he had not taken any action prepetition to explore the subdivision potential of the unimproved parcel, the value of the parcel if subdivided or the costs and time involved in obtaining subdivision approval. All the Debtor appears to have done with respect to this alleged investment property is "think" about the possibility of subdivision and sale. Nothing in the Debtor's testimony demonstrated any serious prepetition effort or action regarding the alleged investment parcel. The petition date is the critical time for determining the facts which determine the applicability of the anti-modification provision of section 1123(b)(5). The evidence of the Debtor's treatment of the Property as a unitary parcel coupled with a lack of evidence of any tangible prepetition efforts to pursue any separate use or sale of the alleged investment parcel support a conclusion under the factors in *Keene* that the Property is one unitary parcel. *See GMAC Mortgage Corp. v. Marenaro (In re Marenaro)*, 217 B.R. 358, 360–61 (1st Cir. BAP 1998) (indicating that "an abstract potential to use property in a different way, never amounting to more than a gleam in the eye of the owner," is insufficient to deny a mortgagee the protection of the anti-modification language). Since the Debtor has failed to establish the necessary history of treatment and use of the Property as separate lots of record, the only collateral subject to the Bank's security interest is the Debtor's principal residence and that security interest may not be modified by a Chapter 11 plan of reorganization.

## B. Value of the Property

Since the Bank's mortgage may not be modified by a Chapter 11 plan of reorganization, the Court need not determine the value of the Property. The Debtor's motion for determination of value is denied as moot.

## C. Necessary to an Effective Reorganization

■ The Bank has filed a motion for relief pursuant to section 362(d)(2) of the Bankruptcy Code on the grounds that (1) the Debtor does not have any equity in the Property, and (2) the Property is not necessary to an effective reorganization. Section 362(d)(2) specifically provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by termination, annulling, modifying, or conditioning such stay—

. . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2). Section 362(g) of the Bankruptcy Code outlines the burden of proof in contested matters involving requests for relief from the automatic stay.

In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g). Accordingly, the Bank has the burden of proof on the issue of equity and the Debtor has the burden of proving that the Property is necessary to an effective reorganization. At the initial evidentiary hearing on the Bank's motion, the parties stipulated that the Debtor

lacks equity in the Property. Thus, the only issue before the Court with respect to the Bank's request for relief from the automatic stay is whether the Property is necessary to an effective reorganization of the Debtor.

■ The testimony on the necessity of the Property was limited. The Debtor testified that the Property does not generate any income. He testified that he might receive between $20,000 and $40,000 in five to eight years when he harvests the oak trees on the property. The Debtors' proposed Chapter 11 plan of reorganization does not rely on any anticipated timber income. The Debtor's proposed Chapter 11 plan of reorganization is based upon bifurcation and modification of the Bank's secured claim. At the close of the evidentiary hearing, counsel for the proposed plan funder stated that if the Bank's mortgage cannot be modified as set forth in the Debtor's proposed Chapter 11 plan of reorganization, a reorganization is not possible. Accordingly, since the Court has found that the Bank's mortgage may not be modified by a Chapter 11 plan, an effective reorganization is not in prospect or even possible.

## IV. CONCLUSION

Because the Debtor lacks equity in the Property and because the Property is not necessary to the Debtor's effective reorganization, the Court grants the Bank's motion for relief under section 362(d)(2). The Debtor's motion for valuation is denied as moot. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.