*898 OPINION
HOLLOWELL, Bankruptcy Judge.
BAC Home Loans Servicing a/k/a Countrywide Home Loans Servicing, LP (BAC) appeals the bankruptcy court’s order (1) approving the debtors’ motion to value and “cram-down” real property subject to BAC’s deed of trust, and (2) confirming their chapter 11 plan of reorganization that modified BAC’s claim.
The bankruptcy court determined that the debtors could modify BAC’s claim secured by the debtors’ real property because it found that at the time of plan confirmation, the debtors were not using the property as their residence, exempting it from the anti-modification provision of § 1123(b)(5).[2]
For the reasons outlined below, we conclude that the appropriate time for determining whether property is a debtor’s principal residence is the petition date. Therefore, we REVERSE.
I. FACTS
Salaheldin Abdelgadir and his wife, Afaf Wahbi, (the Debtors) filed for chapter 13 relief on July 27, 2009. On their bankruptcy petition and schedules, the Debtors listed their address as Las Palomas Drive in Las Vegas (the Property). The Debtors scheduled the Property as the only real property they owned. They scheduled an $0 exemption in the Property.[3]
BAC holds a claim secured by a deed of trust on the Property in the amount of $739,748.[4] According to the Debtors’ schedules, the Property is also subject to a second mortgage in favor of Countrywide Home Lending (Countrywide) in the amount of $175,979. An appraisal of the Property, conducted on August 4, 2009, valued it at $425,000.
The Debtors’ purchased the Property for $704,050 in May 2006. The Debtors and BAC[5] executed a promissory note, which was secured by a first deed of trust on the Property. In connection with the note and deed of trust, the Debtors filled out a form titled “Occupancy Agreement,” which certified that the Debtors would:
occupy the [Property] as my primary year-round residence, within (15) days of recording of the Deed of Trust/Mortgage executed in connection with my loan. This will confirm our understanding and agreement that I intend to occupy the [Property] as my primary year-round residence....
When the Debtors purchased the Property, they were living in Wisconsin. Shortly after the sale on the Property closed, the Debtors’ son moved into the Property and lived there while attending *899 college.[6] In January 2008, the Debtors moved from Wisconsin to Las Vegas and moved into the Property.
After filing bankruptcy, the Debtors filed a motion to modify Countrywide’s claim. The motion asserted that the Debtors “currently reside on a residential property at [Las Palomas Drive].” They contended there was no equity in the Property and proposed to “strip-off’ Countrywide’s second deed of trust as wholly unsecured. Before the bankruptcy court ruled on the motion, the Debtors sought conversion of their case to chapter 11 in order to “better manage the revaluation and reorganization of their residential real estate.” The bankruptcy court granted the motion to convert on January 15, 2010.
On January 25, 2010, the Debtors filed a change of address from the Property to a residence on Aruba Beach Avenue in Las Vegas. The Debtors subsequently filed a second motion to value collateral and modify the rights of secured creditors, BAC and Countrywide (the Motion to Modify). This time, the Debtors contended the Property was investment property, not subject to the anti-modification provision of § 1123(b)(5). Because the Property was appraised at $425,000, the Debtors argued that BAC’s first deed of trust was undersecured. They proposed to bifurcate BAC’s claim to a $425,000 secured claim and $314,748 unsecured claim. The Debtors also proposed to avoid Countrywide’s second mortgage and reclassify that claim as a general unsecured claim in the amount of $186,085.
BAC filed an opposition. First, BAC alleged that the value of the Property was $440,000, according to an appraisal done on March 4, 2010. Additionally, BAC argued the Property was, at all times, the Debtors’ “principal residence” and protected from modification. BAC questioned the residency of the Debtors, noting that the Debtors did not amend their schedules to demonstrate there were leases for either their occupancy of the Aruba Beach property or the rental of the Property. The Debtors filed a reply on April 1, 2010, and submitted the lease agreements for Aruba Beach and the Property.
On March 9, 2010, the Debtors filed a plan of reorganization. They filed an amended plan (Plan) on May 19, 2010. The Plan similarly proposed to cram-down BAC’s claim to the Property value of $425,000. BAC objected, again contending that even if the Debtors were allowed to modify its claim, which it argued they were not, the value of the Property was $440,000.
Prior to a hearing on the Motion to Modify and the Plan, the Debtors and BAC filed additional briefing regarding the issue of whether the Debtors could modify BAC’s claim under § 1123(b)(5). The Debtors took the position that whether the Property was a principal residence for purposes of § 1123(b)(5) was a determination to be made at the time of plan confirmation. BAC, on the other hand, asserted that the character of property must be determined at the time the creditor takes a security interest in the collateral. Alternatively, BAC argued that the bankruptcy court should look to the character of property as of the petition date, since that is the date that exemptions are fixed. Either way, BAC asserted that the Debtors could not circumvent § 1123(b)(5) and modify its claim secured by the Property.
An evidentiary hearing on the Motion to Modify, combined with a hearing on the Debtors’ Plan and disclosure statement, *900 was held on July 1, 2010 (the Hearing). At the Hearing, the parties stipulated to value the Property at $440,000. Thus, the only issue for resolution was whether, for purposes of § 1128(b)(5), the Property was the Debtors’ principal residence and at what date that determination should be made.
The bankruptcy court acknowledged that, in connection with Plan confirmation, the requirement of good faith must be satisfied. “Good faith is always an issue ..., if, for example, somebody, you know, had a piece of property, and they moved out, and then it was obvious they’re going to move back the next month, that raises an issue of good faith.” Hr’g Tr. (July 1, 2010) at 17. To that end, the Debtors provided testimony about their purchase of the Property and their residency there.
The bankruptcy court held a follow-up hearing on October 28, 2010, to set forth its findings of fact and conclusions of law orally on the record. The bankruptcy court found that the Debtors met all plan confirmation requirements and decided to confirm their Plan. It allowed the modification of BAC’s claim because it concluded that the time to determine whether the Debtors’ Property was their principal residence was at the date of confirmation. The bankruptcy court found that the Debtors were not living at the Property at the time of the Hearing, and because the Property had been rented, that it was investment property. Finally, the bankruptcy court found that there was no bad faith or manipulation on the part of the Debtors in moving from the Property.
On December 21, 2010, the bankruptcy court entered its order granting the Motion to Modify. On December 22, 2010, the bankruptcy court entered its order confirming the Debtors’ Plan. BAC timely appealed both orders, asserting the bankruptcy court erred in determining that BAC’s claim was not secured by the Debtors’ principal residence and was subject to modification.
II. JURISDICTION
The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction under 28 U.S.C. § 158.
III. ISSUE
What is the determinative date for whether a claim is secured by a debtor’s principal residence subject to the Bankruptcy Code’s anti-modification provision?
IV. STANDARDS OF REVIEW
We review the bankruptcy court’s statutory construction of § 1123(b)(5) de novo. Lee v. Home Sav. of Am. (In re Lee), 215 B.R. 22, 24 (9th Cir. BAP 1997), citing, In re Consol. Pioneer Mortg., 178 B.R. 222, 225 (9th Cir. BAP 1995).
V. DISCUSSION
Resolving the question of when a claim is determined to be secured by a debtor’s principal residence for purposes of § 1123(b)(5) begins “ ‘where all such inquiries must begin: with the language of the statute itself.’ ” Ransom v. FIA Card Servs., N.A. (In re Ransom), — U.S. —, 131 S.Ct. 716, 723-24, 178 L.Ed.2d 603 (2011) quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Section 1123, entitled “Contents of Plan,” provides that a chapter 11 plan of reorganization may:
modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims, or *901 leave unaffected the rights of holders of any class of claims[.]
11 U.S.C. § 1123(b)(5).[7] By its plain language, § 1123(b)(5) allows debtors to modify the rights of creditors holding certain claims—secured claims and unsecured claims, but sets out a rule against modifying claims that are secured by a debtor’s principal residence.[8]
A “claim” is a defined term under the Bankruptcy Code. 11 U.S.C. § 101(5). Additionally, whether a claim is “secured” or “unsecured” is a term of art defined by § 506. 11 U.S.C. § 506(a)(1). When language is used in one section of a statute and the same language is used in another section, we “can infer that Congress intended the same meaning.” Consol. Freightways Corp. of Del. v. Aetna, Inc. (In re Consol. Freightways Corp. of Del.), 564 F.3d 1161, 1165 (9th Cir.2009) (internal citations omitted); N. Sports, Inc. v. Knupfer (In re Wind N’ Wave), 509 F.3d 938, 944 (9th Cir.2007) (“identical words used in different parts of the same act are intended to have the same meaning.”).
A claim is a “right to payment, whether ... secured, or unsecured.” 11 U.S.C. § 101(5). Claims are deemed allowed when a creditor files a proof of claim and the amount of a claim is determined as of the date of filing a bankruptcy petition. 11 U.S.C. § 502(a), (b); Heath v. Am. Express Travel Related Servs. Co. (In re Heath), 331 B.R. 424, 426 (9th Cir. BAP 2005); Crain v. PSB Lending Corp. (In re Crain), 243 B.R. 75, 83 (Bankr.C.D.Cal.1999). As of the petition date, the estate is created and creditors’[9] rights are fixed as much as possible.
Throughout a bankruptcy proceeding, however, the status of a claim may change depending on the value of its interest. Thus:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor’s interest in the estate’s interest in such property ... and is an unsecured claim to the extent that the value of such creditor’s interest ... is less than the amount of such allowed claim.
11 U.S.C. § 506(a).
Under these principles, a “claim secured by a debtor’s principal residence” may be a secured claim or an unsecured claim. Nobelman v. Am. Sav. Bank, 508 U.S. 324, 331, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1223, 1226-27 (9th Cir.2002). The Supreme Court found that valuation of collateral under § 506(a) determines the status of the creditor’s claim. Nobelman v. Am. Sav. Bank, 508 U.S. at 328-29, 113 S.Ct. 2106. If the claim is determined to be partially se *902 cured, the creditor is still a “holder of a secured claim” whose rights are protected from modification. Id. at 330-31, 113 S.Ct. 2106. However, if a valuation of the collateral leaves the creditor wholly unsecured, the claim may be modified. In re Zimmer, 313 F.3d at 1226-27.
Therefore, in order for § 1123(b)(5) to protect a creditor from modification of its claim, the bankruptcy court must first determine whether the creditor holds a claim secured by a debtor’s principal residence. The second determination is whether the value of the creditor’s claim makes it secured or wholly unsecured. See 11 U.S.C. § 506(a); In re Zimmer, 313 F.3d at 1226; In re Cohen, 267 B.R. at 42.
Here, the bankruptcy court determined that BAC did not hold a claim secured by the Debtors’ principal residence because at the time of the Hearing, the Debtors were no longer living at the Property. The bankruptcy court set plan confirmation as the date for determining whether § 1123(b)(5)’s anti-modification rule applied to BAC’s claim because “this whole process involves valuing. And we know from the [Bankruptcy] [C]ode that you value in connection with what you’re doing, and we know that you value a plan, creditor’s rights, as of the effective date which then refers to confirmation.” Hr’g Tr. (October 28, 2010) at 4:18-23.
The bankruptcy court’s reasoning is compelling. Indeed, § 506(a) provides that:
[the value of a claim] shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor’s interest.
11 U.S.C. § 506(a). Although the amount of a creditor’s claim is fixed at the petition date, there is nothing to indicate that the value of the claim must also be determined at the petition date. Since modification of claims occurs only through debtors’ plans, it is at confirmation that the bankruptcy court considers whether proposed modifications comply with requirements for confirmation. Thus, it may be entirely appropriate to value a claim at the time of plan confirmation. See e.g., In re Crain, 243 B.R. at 83-84 (valuation at confirmation); but see Dean v. LaPlaya Invs., Inc. (In re Dean), 319 B.R. 474, 478-79 (Bankr.E.D.Va.2004) (valuation at petition date because debtor’s use of principal residence is to provide shelter; therefore, court does not need to wait until confirmation to determine debtor’s “use” of his principal residence).
However, even though, the bankruptcy court’s rationale for valuing BAC’s claim at confirmation was reasonable, the interpretation of § 1123(b)(5) as setting the determination of whether a claim is protected from modification at the date of confirmation is flawed. That approach improperly shifts the time for fixing a creditor’s claim from the petition date to some future valuation date. It conflates the analysis of whether a creditor holds a claim with a determination of the value of that claim. The value of BAC’ claim, whether it is secured or unsecured, is a distinct issue from whether BAC’s claim is secured by the Debtors’ principal residence.
The bankruptcy court concluded that confirmation was the determinative date based on the phrase in the statute that reads “real property that is the debtor’s principal residence,” which uses the present tense and signaled to the bankruptcy court that the subject of the sentence, “residence” must presently exist. The Third Circuit, however, read such language differently, finding that:
*903 [b]y using the word ‘is’ in the phrase ‘real property that is the debtor’s principal residence,’ Congress equated the terms ‘real property’ and ‘principal residence.’ Put differently, this use of ‘is’ means that the real property that secures the mortgage must be only the debtor’s principal residence in order for the anti-modification provision to apply.
Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 411 (3d Cir.2006) (concluding that a claim secured by real property that is, in part, not the debtor’s principal residence under the terms of the mortgage, may be modified.)
A narrow focus on sub-phrases, which modify antecedents within the clause, is misplaced. Based on the grammatical structure of the statute, the words “secured only by a security interest in real property that is the debtor’s principal residence” modifies “claim ” and describes the type of claim that is excepted from modification. In re Cohen, 267 B.R. at 43; In re Wetherbee, 164 B.R. 212, 215 (Bankr.D.N.H.1994); see also, Nobelman v. Am. Sav. Bank, 508 U.S. at 331, 113 S.Ct. 2106 (it is reasonable “to read ‘a claim secured only by a [homestead lien]’ as referring to the lienholder’s entire claim”).
We similarly reject the narrow interpretation, made by some bankruptcy courts, that the sub-phrase “real property that is the debtor’s principal residence” is intended to modify the term “security interest.” Based on that construction, those courts conclude the phrase, “security interest in real property that is the debtor’s principal residence” is ambiguous (i.e., it could refer to a home at the present time or when the security interest was created) and rely on legislative history to resolve the ambiguity. See e.g., In re Smart, 214 B.R. 63 (Bankr.D.Conn.1997). Justice Stevens observed, in his concurrence in Nobelman, that the purpose of the anti-modification clause was to provide favorable treatment of home mortgages in order to encourage capital into the home lending market. 508 U.S. at 332,113 S.Ct. 2106. Therefore, in order to align with that purpose, those bankruptcy courts concluded that the appropriate reference date for determining if a property is a principal residence of the debtor is the date that the security interest was created. In re Smart, 214 B.R. at 68; In re Benafel, 2010 WL 5373127 (Bankr.D.Or.2010).
Reliance on legislative history is unnecessary when the statute’s language is unambiguous. Milavetz, Gallop & Milavetz, P.A. v. United States, — U.S. —, 130 S.Ct. 1324, 1332 n. 3, 176 L.Ed.2d 79 (2010). The plain language of § 1123(b)(5) excepts a particular type of claim from modification. As discussed above, a creditor’s right to payment, whether it later is deemed secured or unsecured depending on the value of the collateral, is fixed at the petition date. 11 U.S.C. §§ 101(5), 502; In re Dean, 319 B.R. at 478. Therefore, our statutory analysis leads us to conclude that the determinative date for whether a claim is secured by a debtor’s principal residence is, like all claims, fixed at the petition date.
VI. CONCLUSION
Because the bankruptcy court did not determine the character of BAC’s claim as of the petition date, we REVERSE the orders granting the Motion to Modify and confirming the Debtors’ Plan.

. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All “Rule” references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

. Although the Debtors owned the Property in fee simple, the exemption was taken under Nevada Revised Statute (NRS) 21.090(l)(m), which exempts: "the dwelling of the judgment debtor occupied as a home for himself or herself and family, where the amount of equity held ... does not exceed $550,000 in value and the dwelling is situated upon lands not owned by the judgment debtor.” It does not appear that the Debtors ever filed a declaration of homestead under NRS 115.020(1) for the Property, entitling them to an exemption under NRS 21.090(1)(Z).

. BAC filed a proof of claim on August 21, 2009, in the amount of $739,748.80.

. The original lender was Countrywide Home Loan, Inc. For reasons that are not clear in the record, BAC does not appear to have succeeded to Countrywide's second deed of trust.

. It is unclear if the Debtors’ son paid rent.

. The language of § 1123(b)(5) is identical to that of § 1322(b)(2) and was added to the Bankruptcy Code in 1994 to harmonize the treatment of home mortgage loans in chapter 11 and chapter 13. See Granite Bank v. Cohen (In re Cohen), 267 B.R. 39, 42 (Bankr.D.N.H.2001); Lomas Mortg., Inc. v. Louis, 82 F.3d 1, 6 (1st Cir.1996) (citing legislative history). Therefore, case law that examines § 1322(b)(2) is persuasive in our analysis of § 1123(b)(5).

. BAC argues that "the term 'principal residence' is ambiguous” leaving the courts to determine the meaning of the term and intent of the statute. Appellant’s Opening Br. at 7-10. The Bankruptcy Code defines the “debt- or’s principal residence” as a residential structure, including condominiums, co-ops, mobile homes or trailers. 11 U.S.C. § 101(13A).

. Creditors are fixed at the petition date. A "creditor” is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief.” 11 U.S.C. § 101(10)(A).