NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   WW-11-1249-KiJuH |
| LORINA G. DELFIERRO, | Bk. No.   10-13799-TWD |
| Debtor. | Adv. No.   10-01372-TWD |
| | |
| MARINERS INVESTMENT FUND, LLC, as Assignee of Second Mariners Investment Fund REO, LLC, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| LORINA G. DELFIERRO, | |
| Appellee. | |

Argued and Submitted on March 23, 2012
at Seattle, Washington

Filed - May 29, 2012

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

Appearances:    Joe Solseng, Esq. of Robinson Tait, P.S. argued for Appellant; and M. Wayne Boyack, Esq. argued for Appellee.

Before: KIRSCHER, JURY, and HOLLOWELL, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, PENSCO Trust Company Custodian FBO Jeffery D. Hermann, IRA Account Number ****5343 ("PENSCO"), successor in interest to Mariners Investment Funds, LLC as assignee of Second Mariners Investment Fund REO, LLC (collectively "Mariners"), appeals a bankruptcy court order bifurcating Mariners' secured claim on debtor's real property under 11 U.S.C. § 506(a).[2]  The bankruptcy court determined that the property was not the debtor's principal residence at the time of the loan transaction and, therefore, the claim was not protected from modification by § 1322(b)(2).  On December 9, 2011, while this appeal was pending, we issued an opinion holding that the date for determining whether debtor's real property is his or her principal residence for purposes of § 1322(b)(2) is the date of the petition.  See Benafel v. One West Bank, FSB (In re Benafel), 461 B.R. 581, 585 (9th Cir. BAP 2011).[3]  Although the bankruptcy court applied an incorrect legal standard – loan date as opposed to petition date – such error was harmless because the record reflects that the debtor was not using the residence at issue as her principal residence on either the loan date or the petition date.  We AFFIRM.

////

////

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] See also BAC Home Loans Serv., LP v. Abdelqadir (In re Abdelqadir, 455 B.R. 896, 898 (9th Cir. BAP 2011) (determining in a chapter 11 case that "the appropriate time for determining whether property is a debtor's principal residence is the petition date.").  The Panel in In re Benafel adopted this rule from In re Abdelqadir as the material provisions of § 1322(b)(2) and § 1123(b)(5)are identical.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    Prepetition events.**

Debtor, Lorina G. Delfierro ("Delfierro"), came to the United States from the Philippines in 1996. Since 1999, Delfierro has been in the business of operating adult family homes ("AFH") caring for elderly patients. In 1997, she bought a home in Federal Way, Washington (the "533 Property"), where she currently resides. In 1999, Delfierro began purchasing properties to operate as AFHs.[4] Delfierro sold two such properties in December 2006, and the closing on those properties occurred in February 2007.

In May 2006, Delfierro purchased another single family home in Federal Way (the "4009 Property"), which is the property subject to the order on appeal. The 4009 Property was not an AFH at the time Delfierro purchased it. With plans to convert the property to an AFH, in May 2006 Delfierro and her now ex-spouse moved into the 4009 Property and immediately began renovating it, installing wheelchair ramps, grab bars, electric hospital beds, bath stools, fire extinguishers, and a caretaker's quarters. About seven months later in December 2006, Delfierro and her ex-spouse moved (or at least began moving) out of the 4009 Property and back into the 533 Property.

In February 2007, Delfierro applied for an inspection of the 4009 Property with the Department of Social and Health Services to obtain a license for operating it as an AFH. Once the renovations were completed, an inspector visited and approved the

---

[4] Under her state license, Delfierro is allowed to care for up to six patients in each AFH.

4009 Property as an AFH in May 2007.

With funds running short, in June 2007 Delfierro sought to refinance two mortgages on the 4009 Property. During this time period, Delfierro had one patient residing at the 533 Property and one patient residing at the 4009 Property.[5] For the refinance, Delfierro contacted Ray Hoelscher ("Hoelscher"), a mortgage broker whom she had known since 1999 and who had facilitated several purchase money loans and refinancings for Delfierro's other properties. Delfierro believed Hoelscher to be an expert in securing financing for adult family homes.

Hoelscher eventually procured refinancing for Delfierro's mortgages on the 4009 Property with EquiFirst Corporation ("EquiFirst") in July 2007. On July 16, 2007, Delfierro signed the final Uniform Residential Loan Application and executed a note in the amount of $572,850 secured by a first deed of trust in favor of EquiFirst. The loan had an adjustable interest rate of 9.2% to 15.2%. The final loan application, dated July 12, 2007, said the purpose of the loan was for a refinance of a "Primary Residence" as opposed to a "Secondary Residence" or "Investment," and that the purpose of the refinance was for "cash-out/debt consolidation." Delfierro's present address was listed as the 4009 Property, and her monthly income was listed as "$32,170." The application showed that Delfierro owned two properties (the 4009 Property and the 533 Property, both of which were listed as "single family residences"), and the 533 Property was denoted as a

[5] With her AFH license still pending on the 4009 Property, Delfierro could care for no more than one patient at that location.

"rental" property generating $1,800 monthly in rent. Although Delfierro had one patient living at the 4009 Property, no monthly income was listed for this property. In the "Declarations" portion of the loan application, the box "Yes" had been checked as to whether Delfierro intended to occupy the 4009 Property as her primary residence, and the box "No" had been checked as to whether Delfierro had owned any real property in the past three years. EquiFirst conducted an appraisal on the property prior to the loan, but the document could not be located for trial.

Delfierro obtained her AFH license for the 4009 Property in August 2007, and she quickly filled the home with five more patients by September 2007. The 4009 Property has been operating as an AFH at all times since.

In January 2009, Delfierro, appearing pro se, filed a complaint in state court against various defendants (including EquiFirst) for rescission and damages in connection with her 2006 purchase money loan for the 4009 Property. Specifically, Delfierro was suing defendants for violations under TILA, RESPA, HOEPA (the Home Ownership and Equity Protection Act of 1994), and the Fair Debt Collection Practices Act. These claims are available for lender violations in connection with a homeowner's primary residence. Delfierro's mailing address on her complaint was listed as the 4009 Property.[6] Defendants removed the case to the U.S. District Court for the Western District of Washington,

---

[6] Mariners acquired the loan on the 4009 Property in April 2009 and became the owner and holder of the note pursuant to an endorsement made in blank. Mariners became the beneficiary under the deed of trust pursuant to an Assignment of Deed of Trust, recorded on March 23, 2010, in King County, Washington.

but it was dismissed without prejudice in June 2009.

Meanwhile in May 2009, Mariners was the successful bidder at a foreclosure sale of the 4009 Property, which it obtained for $370,000. About a week after Delfierro's first complaint had been dismissed, she filed a second complaint in the District Court against the same defendants (and others) for wrongful foreclosure.

Shortly after the foreclosure sale, Mariners filed an eviction action against Delfierro in state court. Delfierro hired counsel to help defend her in that matter. Before and while the action was pending, Delfierro had been negotiating with Mariners for a possible loan modification. After a bench trial in September 2009, the state court set aside the foreclosure sale and restored Mariners' lien.

**B. Postpetition events.**

**1. The complaint and Mariners' motion for summary judgment.**

Delfierro filed a chapter 13 bankruptcy on April 5, 2010. In her Schedule A, Delfierro valued the 4009 Property at $317,000, which was based on a recent tax assessment from King County.

On July 13, 2010, Delfierro filed an adversary complaint against Mariners (and others) seeking to determine the value of Mariners' secured lien on the 4009 Property at $317,000. Delfierro wished to bifurcate Mariners' lien into a secured portion at $317,000 and an unsecured portion for the amount remaining. According to Mariners' proof of secured claim, the amount due on the loan was $679,017.30. In their answer, defendants contended that Delfierro never indicated the 4009 Property would be used for business when she obtained the refinance loan.

-6-

Mariners moved for summary judgment to dismiss Delfierro's complaint, asserting that her claim failed as a matter of law. While Mariners admitted that Delfierro was perhaps currently using the 4009 Property as both her primary residence and as an AFH, it contended that at the time she obtained the refinance loan (and later in her loan modification papers in October 2009) Delfierro indicated the 4009 Property would be used as her primary residence, not as a business or investment property. This statement was bolstered by the fact that neither a family rider nor an assignment of rents was attached to the loan papers. Mariners argued that for purposes of § 1322(b)(2), the court had to determine the character or use of the debtor's property at the time of the loan transaction. Thus, according to Mariners, because the 4009 Property was Delfierro's primary residence at the time of the loan, its lien was subject to the antimodification protection afforded by § 1322(b)(2) and could not be crammed down under § 506(a). Delfierro opposed the motion.

The bankruptcy court (Judge Steiner) held a hearing on Mariners' motion for summary judgment on November 17, 2010. The court granted the motion in part, holding that for purposes of § 1322(b) "the character of the property is determined as of the date of the loan, not as of the date of the [bankruptcy] filing." The material, factual question of what was the character of the 4009 Property at the time of the loan would have to go to trial.

A pretrial order was entered on April 8, 2011. Based on a recent appraisal, the parties stipulated that the value of the 4009 Property was $325,000.

////

**2.    The trial.**

A one-day trial was held on April 11, 2011, before Judge Dore. Delfierro and Brian Carl ("Carl"), an expert forensic loan document examiner and mortgage broker, testified for plaintiff. Expert witness Ray Cafarelli ("Cafarelli"), a mortgage broker of 21 years, and Julie Bruso, the escrow officer handling Delfierro's refinance loan with EquiFirst, testified for defendants. Hoelscher, who was a close friend of Delfierro and completed her loan application, could not be located to testify.

The parties agreed that, based on the prior ruling by Judge Steiner, the character of the property was to be determined as of the date of the loan for purposes of § 1322(b).[7] During closing argument, the bankruptcy court observed that § 1322(b)(2) was subject to two interpretations: (1) to interpret it based on what the character of the loan is, which was the focus of most of the testimony; or (2) to interpret it based on what the property is actually used for. The court asked counsel whether it should be looking at how Delfierro used the 4009 Property at the time of the loan, or whether it should focus on the nature of the loan she received. Defendants' counsel replied that regardless of how Delfierro used the property at the time of loan, which they argued was as a primary residence, the documents used by the parties and all other evidence proved Delfierro received a loan for an owner-occupied residence, and that the nature of the loan is what the court should consider for purposes of § 1322(b)(2). The court

---

[7] The bankruptcy court also observed that no order with respect to Judge Steiner's ruling on Mariners' summary judgment motion had ever been entered.

invited the parties to file post-trial briefing on this narrow issue by April 13, 2011. It then took the matter under advisement.

The court issued its oral ruling in favor of Delfierro on April 15, 2011. It considered the numerous inaccuracies in the loan documents prepared by Hoelscher and signed by Delfierro, and it also considered that no evidence was presented on what EquiFirst knew about the 4009 Property when it made the loan or what information Hoelscher actually provided to EquiFirst about Delfierro's financing needs. The court also considered the testimony by both expert witnesses. It found both experts, as well as Delfierro, to be credible witnesses.

Turning to the law and noting an absence of Ninth Circuit authority on the issue, the bankruptcy court considered the different approaches courts utilize in applying § 1322(b)(2). It concluded that the loan transaction date was the relevant date for determining whether debtor's real property was debtor's primary residence. Based on the evidence presented, the court concluded that the 4009 Property was not Delfierro's primary residence at the time the loan was made in July 2007. Notably, the bankruptcy court found that since 1997, with the exception of several months from late 2006 to early 2007, Delfierro lived at the 533 Property. Oral Ruling Tr. (Apr. 15, 2011) at 4:11-14.

The bankruptcy court entered an order reducing Mariners' secured lien to $325,000 on May 5, 2011. Mariners timely appealed.[8]

_____

[8] Mariners' loan was subsequently sold to PENSCO, who is now
(continued...)

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(L) and 1334.  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court correctly interpret § 1322(b)(2)?

2. Assuming the bankruptcy court applied the correct standard of law, did it clearly err in its findings of fact?

## IV. STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error and conclusions of law de novo.  Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 378 (9th Cir. BAP 2011); Salazar v. McDonald (In re Salazar), 430 F.3d 992, 994 (9th Cir. 2005).

We review the bankruptcy court's interpretation of § 1322(b)(2) de novo.  W. States Glass Corp. v. Barris (In re Bay Area Glass, Inc.), 454 B.R. 86, 88 (9th Cir. BAP 2011); Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 881 (9th Cir. 2006).  De novo review requires that we consider a matter anew, as if it had not been heard before, and as if no decision had been rendered previously.  B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

## V. DISCUSSION

Generally, a claim that is secured by a lien on property is treated as a secured claim "only to the extent of the value of the

---

[8](...continued)
the owner and holder of the note pursuant to an endorsement made in blank.  PENSCO is also the current beneficiary of the deed of trust pursuant to an Assignment of Deed of Trust.

-10-

property on which the lien is fixed." <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 239 (1989). To the extent that the amount of the claim is greater than the value of the property, it is considered unsecured. § 506(a)(1). "Thus, a claim that is not fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral." <u>Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)</u>, 461 F.3d 406, 410 (3d. Cir. 2006)(citations omitted); § 506(a).

Section 1322(b)(2) carves out an exception to this general rule and provides that a plan cannot modify the rights of holders of a claim secured only by a security interest in real property that is the debtor's principal residence. In other words, a secured creditor qualifies for what is called the "antimodification" protection of § 1322(b)(2). The purpose of § 1322(b)(2) is "to encourage the flow of capital into the home lending market" by affording antimodification protection to home mortgage lenders. <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324, 332 (1993)(Stevens, J., concurring). The threshold issue, therefore, is whether a creditor's claim is secured only by real property that is the debtor's principal residence.

After briefing by the parties in this appeal was completed, the Panel issued a published opinion holding that the petition date, rather the loan transaction date, is the relevant date for determining whether debtor's real property is his or her principal residence for purposes of § 1322(b)(2). <u>In re Benafel</u>, 461 B.R. at 585. We are bound by our prior precedent, absent changes in statute or controlling Court of Appeals or Supreme Court precedent. <u>Palm v. Klapperman (In re Cady)</u>, 266 B.R. 172, 181 n.8

-11-

(9th Cir. BAP 2001), aff'd, 315 F.3d 1121 (9th Cir. 2003).

After a trial on the issue, the bankruptcy court determined that the 4009 Property was not Delfierro's principal residence at the time of the loan transaction in July 2007, and therefore Mariners' secured lien was subject to modification under § 506(a). PENSCO argues on appeal that the bankruptcy court erred in interpreting § 1322(b)(2) by looking to the character of the property rather than the character of the loan at the time of the loan transaction. In light of In re Benafel, the bankruptcy court applied an incorrect standard of law and, unfortunately, PENSCO's argument is irrelevant. However, the court's error was harmless because even when applying the correct legal standard, we conclude the 4009 Property was not Delfierro's primary residence at the time of petition and the secured lien on the 4009 Property was subject to modification under § 506(a).

Although the parties focused their testimony and documentary evidence on whether the 4009 Property was Delfierro's primary residence at the time of the loan, the pertinent question is whether the 4009 Property was Delfierro's primary residence on the petition date. We initially considered remanding this matter for further proceedings to allow the parties to submit evidence as to where Delfierro lived at the time of petition. However, upon full review of the record, we decided remand was unnecessary. By finding that Delfierro lived at the 533 Property from 1997 to present, except for certain months in 2006 and 2007, the bankruptcy court essentially found that on the petition date Delfierro's primary residence was the 533 Property, not the 4009 Property. Despite PENSCO's arguments to the contrary, we

-12-

conclude this finding was not clearly erroneous.[9]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

[9] PENSCO asserted at oral argument that Delfierro's deception with respect to the refinance loan takes her case out of the precedent of In re Benafel. In other words, her alleged deception in connection with the loan should preclude her from using the petition date as the relevant date for purposes of § 1322(b)(2). We note that § 1322(b)(2) makes no reference about what is contained in a debtor's loan documents, and we could not locate any authority to support PENSCO's contention.

-13-