KURTZ, Bankruptcy Judge,
Dissenting.
I respectfully dissent. I disagree with the majority’s interpretation of the so-called plain meaning of the statute. In my view, the majority takes the statutory phrase “claim secured only by a security interest in real property that is the debt- or’s principal residence” and recasts it as if the phrase actually read “claim secured only by a security interest in real property that includes the debtor’s principal residence.”
In lieu of the majority’s analysis, I find persuasive and would follow the reasoning and holding of Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 410-13 (3d Cir.2006). In Scarborough, the Third Circuit Court of Appeals held that the anti-modification provisions in § 1322(b)(2) and § 1123(b)(5) do not apply to mortgaged real property on which the debtor principally resides if the debtor uses another part of the mortgaged real property to generate income. Id.
Like the majority decision, supra, Scarborough considered the statutory language to be unambiguous. However, Scarborough reached a much different conclusion on the plain meaning of the statute. Whereas the majority here has construed the anti-modification provisions to apply to any mortgaged real property the debtor uses as his or her principal residence, Scarborough effectively construed the anti-modification provisions to apply only to mortgaged real property the debtor uses exclusively as his or her principal residence. That two appellate courts could, after careful analysis, come to such divergent conclusions on the plain meaning of the statute tends to support the notion that the statute actually is ambiguous. In any event, Scarborough points out that the legislative history supports its construction of the statute. Id. at 413. The majority decision herein makes no such claim.
The majority considered Scarborough but ultimately rejected the Third Circuit’s analysis. According to the majority, Scarborough ’s construction of the statute conflicts with the statutory definition of “debt- or’s principal residence” contained in § 101(13A). The majority asserts that a conflict exists because Scarborough’s construction of § 1322(b)(2) and § 1123(b)(5) equates the “debtor’s principal residence” solely with real property whereas the statutory definition of “debtor’s principal residence” may include personal property. But the majority does not explain the practical significance of this so-called conflict, nor do I perceive any. More importantly, to the extent there is any tension between § 1322(b)(2) and § 1123(b)(5) on the one hand and § 101(13A) on the other hand, Congress created this tension — not Scarborough. Put another way, Congress limited the scope of the anti-modification provisions to real property by including in both provisions the term “real property” but chose not to similarly limit the definition of “debtor’s principal residence.” Thus, the difference between the anti-modification provisions and the statutory definition is a direct result of the different language Congress chose to use in each instance. That Scarborough’s construction gives meaning to the different lan *169 guage Congress used is not a persuasive basis for rejecting Scarborough.
For the reasons set forth above, I respectfully dissent.[1]

. I also prefer Scarborough's ruling that the relevant date for considering how the debtor uses the property is the loan transaction date rather than the petition date. Id. at 412. Nonetheless, I do not base my dissent on this ground. Rather, I agree with the majority that our prior decisions in Benafel v. One W. Bank, FSB (In re Benafel), 461 B.R. 581 (9th Cir. BAP 2011), and BAC Home Loans Serv., LP v. Abdelgadir (In re Abdelgadir), 455 B.R. 896 (9th Cir. BAP 2011), are controlling on this point and answer this question in favor of the petition date. Even so, regardless of which date is used, the result in this case would be the same because the mortgaged real property was used for income generating purposes on both the loan transaction date and the petition date.